UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DEBRA BLACK,** | **2:24-CV-11767-TGB-KGA** |
| Plaintiff, | |
| | HON. TERRENCE G. BERG |
| **v.** | |
| | **ORDER GRANTING DEFENDANT WEST TECH'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 44)** |
| **UNITED STATES OF AMERICA et al.,** | |
| Defendants. | **AND GRANTING IN PART AND DENYING IN PART DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 49)** |

Operating a forklift to unload a United States Postal Service ("USPS") tractor-trailer, Plaintiff Debra Black was injured when the forklift rolled backward into a gap between the trailer and the warehouse loading dock, and she fell to the ground. Black now brings suit against Defendants the United States of America and West Tech Development, LLC ("West Tech"), the owner and lessor of the premises where the accident occurred. ECF No. 22.

Now before the Court is Defendant West Tech's Motion for Summary Judgment, ECF No. 44, which will be granted, and Defendant

United States's Motion for Summary Judgment, ECF No. 49, which will be granted in part and denied in part.

## I. BACKGROUND

On January 3, 2023, Plaintiff Debra Black worked as a forklift operator for American Master Products, Inc., which leased a warehouse in the City of Wixom, Michigan that was owned by Defendant West Tech. ECF No. 44, PageID.248–49; ECF No. 46, PageID.447. On that day Black drove the forklift into a United States Postal Service tractor-trailer to unload shipping pallets from the trailer into the warehouse. ECF No. 22, PageID.131; ECF No. 49, PageID.874–876.

The warehouse had a single loading dock that sloped downward. ECF No. 49, PageID.874–875; ECF No. 51, PageID.1060. At the loading dock, American Master Products had placed two movable metal ramps that were used to raise its smaller box trucks to dock height. ECF No. 49, PageID.875; ECF No. 51, PageID.1060–61.

After the United States Postal Service tractor-trailer backed the vehicle onto the wheel ramps at the loading dock, ECF No. 49, PageID.876, Plaintiff drove her forklift into the trailer, picked up the first load of pallets, and took her foot off the brake without looking behind her. ECF No. 49, PageID.877–78; ECF No. 51, PageID.1062–63; ECF No. 51, PageID.1105; ECF No. 49-4, PageID.961.

For reasons that are unclear from the record, the tractor-trailer had separated from the loading dock by a distance of three to four feet,

2

creating a gap. ECF No. 49, PageID.878; ECF No. 51, PageID.1063; ECF No. 49-4, PageID.961. The forklift rolled backwards into this gap and was wedged between the trailer and the dock. ECF No. 49, PageID.878; ECF No. 51, PageID.1063; ECF No. 49-4, PageID.961. Plaintiff was not wearing a seat belt at the time, and when the forklift went into the gap, she fell out of the forklift and onto the ground. ECF No. 49, PageID.878; ECF No. 49-4, PageID.959.

Plaintiff was taken to the hospital by an ambulance. ECF No. 49, PageID.879; ECF No. 51, PageID.1064. Plaintiff fractured her pelvis in two places and broke her elbow. ECF No. 49, PageID.879; ECF No. 51, PageID.1064; ECF No. 49-4, PageID.944, PageID.964.

Plaintiff initiated suit on July 9, 2024. ECF No. 1. On November 22, 2024, Plaintiff filed the operative complaint, alleging following counts: (I) Negligence, Gross Negligence against the operator of the Postal Service tractor-trailer; (II) Vicarious Liability against the United States; and (III) an unlabeled count against West Tech. ECF No. 22.

On December 22, 2025, Defendant West Tech filed a motion for summary judgment, arguing that (1) as landlord, West Tech did not have possession or control over the conditions that Plaintiff alleges caused the accident and (2) Plaintiff has failed to establish that her injuries were the result of a dangerous condition on the land. ECF No. 44. Plaintiff has responded. ECF No. 46.

On May 8, 2026, the Government filed a motion for summary judgment, arguing that (1) Plaintiff is limited to noneconomic damages against the Government because Plaintiff has not presented any evidence that she is entitled to economic damages beyond the statutory first-party limits; (2) Plaintiff is barred from recovering noneconomic damages because she is more than 50% at fault for her injuries; and (3) the Court may consider evidence that American Master Products was at fault. ECF No. 49. Plaintiff has responded to both motions, ECF No. 51, and the Government has replied, ECF No. 53.

On July 14, 2026, the Court held a hearing on the summary judgment motions.

## II.   STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); see also Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under governing law. See *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. See *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Instead, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252. For the Court to grant summary judgment, the evidence cannot be such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

5

## III.   DEFENDANT WEST TECH'S MOTION FOR SUMMARY JUDGMENT

Defendant West Tech moves for summary judgment, arguing that (1) West Tech did not have possession or control over the conditions that Plaintiff alleges caused the accident and (2) Plaintiff has failed to establish that her injuries were the result of a dangerous condition on the land. ECF No. 44.

However, before the Court can address these arguments, the Court must determine whether Count III states a claim of ordinary negligence or a claim premised on a condition of the land (a "premises liability" claim).

Both Defendant West Tech and Plaintiff assume that Count III brings a claim of premises liability. *See* ECF No. 44, PageID.253; ECF No. 46, PageID.450. The Court disagrees.

"Michigan law distinguishes between a claim of ordinary negligence and a claim premised on a condition of the land." *Quigley v. Detroit Airlines N. Terminal Consortium, Inc.*, No. 367717, 2025 WL 2954126, at *3 (Mich. Ct. App. Oct. 17, 2025) (citation omitted). "If it is alleged that the plaintiff's injuries arose from a dangerous condition on the land, the claim is one of premises liability rather than one of ordinary negligence." *Id.* (citation omitted). "In other words, if the plaintiff's injury arose from a condition of the land, the plaintiff's claim sounds exclusively in premises liability, not ordinary negligence, and the claim of premises

6

liability may only be successfully prosecuted against a defendant who had possession and control of the premises." *Id.*

Plaintiff's operative complaint does not label Count III, and, in any case, "[w]hether the gravamen of an action sounds in ordinary negligence or in premises liability is determined by considering the plaintiff's complaint as a whole, regardless of the labels attached to the allegations by the plaintiff." *Id.* (cleaned up).

> The Complaint alleges that
>
> disregarding [their duties to exercise reasonable care and caution in and about their premises, West Tech] failed to exercise reasonable and ordinary care and caution while loading and unloading semi-trucks and, in fact, *created the dangerous condition* in the following manner, to wit: Carelessly, negligently, accidentally, recklessly, and with reckless misconduct *allowed the Driver of the semi-truck, to back away from the loading dock when Plaintiff, in her Hi-Lo was still in the trailer* unloading pallets which caused the severe, painful and disabling personal injuries to Plaintiff

ECF No. 22, PageID.137 (emphasis added). The Complaint goes on to allege

> That [West Tech] was then and there guilty of one or more of the following negligent acts or omissions in violation of its duties to Plaintiff … negligently, accidentally, recklessly, and with reckless misconduct in *allowing the semi-truck to back away from the loading in a reasonably safe way in which other players/persons would not be injured.*

*Id.* (emphasis added).

This somewhat ambiguous claim fails to clearly state whether the claim is for premises liability based on a dangerous condition on the land or for ordinary negligence. In fact, the Complaint uses language that could plausibly be read to suggest both: on the one hand alleging that West Tech "created the dangerous condition" and on the other that the condition was that West Tech "negligently . . . allowed the Driver of the semi-truck, to back away from the loading dock when Plaintiff, in her Hi-Lo was still in the trailer . . ." *Id.*

In other words, Plaintiff alleges that West Tech breached its duties towards Plaintiff by *allowing* the semi-truck to back away from the loading. While Plaintiff mentions that West Tech "created the dangerous condition," the Complaint fails to identify what that condition was and does not mention any condition of the land—a point conceded by Plaintiff during the July 14, 2026 hearing, although counsel also stated that the claim was intended as a premises liability cause of action. Indeed, as stated, the "condition" is actually described as a negligent action taken by West Tech—that it "allowed the Driver of the semi-truck, to back away from the loading dock," *id.*—and there is no reference in the Complaint to any feature of the land, dangerous or otherwise. Although the parties' briefing and the record refers to the dock's downward slope, the movable ramps, and the lack of use of "chocks" to block the truck tires, none of these conditions are mentioned anywhere in the operative complaint. In fact, the Complaint contains no allegations tying Plaintiff's injuries to

any physical condition of the premises. Instead, Count III ties Plaintiff's injury solely to Defendant West Tech having *allowed* the truck's operator to back away from the dock. Thus, a plain reading of Count III shows that it pleads a claim of ordinary negligence against Defendant West Tech, *not* a premises liability claim.

And it makes no sense to try to construe Count III's allegation that Defendant West Tech "allow[ed] the semi-truck to back away from the loading," *id.*, as somehow stating a premises liability claim against Defendant West Tech. As mentioned above, the Complaint contains no allegation suggesting that *any* condition of the land led to the truck's movement: the Complaint does not mention the dock's downward slope, the movable ramp system, or the use of tire blocks. In the absence of such allegations, construing the Complaint to seek to hold Defendant West Tech responsible for some unmentioned condition of the land would deny Defendant West Tech "fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

Defendant West Tech's motion for summary judgment proceeds with the assumption that Count III pleads a claim of premises liability. *See* ECF No. 44, PageID.253. However, the fact that Count III states an ordinary negligence claim rather than a premises liability claim does not require the Court to deny Defendant West Tech's motion or to defer its resolution. That is because Defendant West Tech's first argument in

favor of summary judgment—that there is no factual issue in dispute as to the fact that it did not have possession or control over the instrumentality that Plaintiff alleges caused the accident—although cast in premises liability terms, is equally dispositive of Count III as a claim of ordinary negligence.

The Complaint alleges a single negligent act or omission on the part of West Tech giving rise to liability for ordinary negligence: that Defendant West Tech "allowed the Driver of the semi-truck to back away from the loading dock when Plaintiff, in her Hi-Lo was still in the trailer unloading pallets." ECF No. 22, PageID.137; *id.* ("in allowing the semi-truck to back away from the loading in a reasonably safe way … ").

The Complaint provides no further allegations detailing *how* Defendant West Tech *allowed* the driver of the United States Postal Service tractor-trailer to back away from the loading dock. *See id.* Accordingly, it is unclear from the face of the Complaint whether Plaintiff alleges that Defendant West Tech is responsible for the driver's operation of the truck or that Defendant West Tech is responsible for somehow *allowing* the truck to move. Under either understanding, summary judgment is proper.

To the extent Count III seeks to hold Defendant West Tech responsible for the driver's operation of the truck, Michigan law requires a controlling relationship that Defendant West Tech did not have.

Under Michigan law, liability is not imposed upon a defendant for the acts of a third party, absent some meaningful ability to control that third party. *See Laster v. Henry Ford Health Sys.*, 316 Mich. App. 726, 734 (2016) ("Generally, Michigan law will impose liability upon a defendant only for his or her own acts of negligence, not the tortious conduct of others."). Such meaningful control exists when the third party was an employee or an agent of the defendant. *See id.*

However, as conceded by Plaintiff during the July 14, 2026 hearing, the undisputed facts show that Defendant West Tech had no control over the driver. It is undisputed that the driver was employed by the United States Postal Service, *see* ECF No. 49-6, PageID.991; ECF No. 49, PageID.876, and was not employed by West Tech. Nor does Plaintiff allege, or point to any evidence, that West Tech otherwise controlled the driver in any manner. This undisputed fact is fatal to Plaintiff's general negligence claim: because it is undisputed that Defendant West Tech had no meaningful control over the driver of the tractor-trailer, Defendant West Tech cannot be held liable for that person's actions. Thus, summary judgment is proper.

Nor is there any indication in the record that Defendant West Tech otherwise *allowed* the truck to move—again, a point Plaintiff conceded during the motion hearing. There is no factual disagreement that Defendant West Tech did not have control over the truck. ECF No. 44, PageID.250 ("the subject USPS truck … are artificial conditions of the

11

land … and are under the ownership and control of Defendant United States and non-party American Master Products, Inc."); ECF No. 46, PageID.448 (not denying the fact that the truck is an artificial condition under the ownership and control of Defendant United States and non-party American Master Products, Inc.). In fact, Plaintiff testified that "how the truck is backed up or connects to the building" is "all up to the driver." ECF No. 49-4, PageID.950. Absent any indication of control over the truck, it cannot be said that Defendant West Tech *allowed* the truck to move.

The Complaint alleges a single negligent act or omission on the part of West Tech that could give rise to liability for negligence: that Defendant West Tech "allowed the Driver of the semi-truck to back away from the loading dock when Plaintiff, in her Hi-Lo was still in the trailer unloading pallets." ECF No. 22, PageID.137; *id.* ("in allowing the semi-truck to back away from the loading in a reasonably safe way … "). However, the undisputed facts show that Defendant West Tech did not have any control over either the driver or the truck. Thus, no reasonable jury could find that Defendant West Tech *allowed* the driver (or the truck) to move.

Accordingly, the Court **GRANTS** summary judgment to Defendant West Tech on Count III of the Complaint.

### III.   THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

The Government moves for summary judgment arguing that (1) because Plaintiff has not presented any evidence that she is entitled to economic damages beyond the statutory first-party limits, her potential recovery against the United States is limited to noneconomic damages; (2) Plaintiff is barred from recovering noneconomic damages because she is more than 50% at fault for her injuries; (3) the Court may consider evidence that American Master Products was at fault. ECF No. 49.

The Court will address these arguments in turn.

### 1.   Whether Plaintiff's Potential Recovery against the United States of America is Limited to Noneconomic Damages

"The FTCA [Federal Tort Claims Act] provides the exclusive waiver of sovereign immunity for suits sounding in tort against the United States or its employees acting within the scope of employment." *Wilburn v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 771 F. Supp. 3d 950, 961 (E.D. Mich. 2025) (DeClercq, J.); *see* 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2679 (b)(1). Under the FTCA, "the district court applies local law to determine liability and to assess damages." *Premo v. United States*, 599 F.3d 540, 545 (6th Cir. 2010).

As both parties recognize, *see* ECF No. 49, PageID.882–83; ECF No. 51, PageID.1065, here, the applicable law is Michigan's No-Fault Act,

13

which governs tort liability for injuries caused by ownership, maintenance, or use of motor vehicle, *see* MCL § 500.3135.

Michigan's No-Fault Act abolishes tort liability arising out of the ownership, maintenance, or use of a qualifying motor vehicle except as to a list of enumerated circumstances. MCL § 500.3135(3); *McCormick v. Carrier*, 487 Mich. 180, 189 (2010). One of these circumstances allows for the recovery of "allowable expenses, work loss, and survivor's loss" that exceed the statutory limits for the recovery of economic damages in a first-party action, i.e. an action brought by an accident victim against his or her own insurance company. MCL § 500.3135(3)(c); *Skipper v. United States*, No. 14-14281, 2016 WL 827376, at *6 (E.D. Mich. Mar. 3, 2016) (Steeh, J.); *McCormick*, 487 Mich. at 235 n.10 (Markman, J., dissenting) ("an at-fault driver is still liable in tort for an injured person's excess economic damages").

Relevant here, the section applicable to work loss states that "personal protection insurance benefits are payable for … Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured." MCL § 500.3107(1)(b). Accordingly, in order to recover for work loss from the United States, Plaintiff "must show that she had work loss damages extending beyond the three-year limit in the no-fault statute." *Harms v. United States*, No. 15-13215, 2017 WL 3642202, at *12 (E.D. Mich. Aug. 24, 2017) (Michelson, J.).

In its motion for summary judgment, the Government states that

> [t]here are two types of claims under the No-Fault Act: a first-party claim against a no-fault insurer, and a third-party claim against a negligent tortfeasor. A first-party claim covers economic damages such as medical bills and wage loss incurred within the first three years of a qualifying injury. *Id.* §§ 500.3105, 500.3107, 500.3108. Tort liability continues to exist for a third-party claim against an at-fault driver—including damages for noneconomic loss and some economic loss exceeding statutory first-party limits—only if the injured person has suffered "death, serious impairment of body function, or permanent serious disfigurement." *Id.* § 500.3135(1), (3)(c).

ECF No. 49, PageID.883. However, the Government argues, "Black has not presented any evidence that she is entitled to economic damages beyond the statutory first-party limits. Mich. Comp. Laws § 500.3135(3)(c). Thus, her potential recovery against the United States is limited to noneconomic damages." *Id.* at PageID.885.

> In response, Plaintiff argues that

> The United States … contends that Plaintiff's claims are … limited to noneconomic damages. That is not an accurate statement of Michigan law. While MCL 500.3135 preserves tort liability for noneconomic loss only when the threshold injury requirement is met, the same statute separately preserves tort liability for "allowable expenses, work loss, and survivor's loss" to the extent those losses exceed the statutory temporal or monetary limitations applicable to first-party benefits.
>
> …
>
> Accordingly, the motion should be denied to the extent it seeks a ruling that Plaintiff's damages are categorically limited to

> noneconomic loss. At minimum, Michigan law permits Plaintiff to pursue any excess economic damages supported by the proofs, in addition to any recoverable noneconomic damages.

ECF No. 51, PageID.1065–66.

Plaintiff attacks a legal proposition the Government did not advance: the Government does not contend that Michigan's No-Fault Act *categorically forecloses* excess economic loss as a matter of law. In fact, the Government concedes MCL § 500.3135(3)(c) preserves such damages and argues only that Plaintiff has produced no evidence of any such damages. *See* ECF No. 49, PageID.885; *see* ECF No. 53, PageID.1239 ("But Black cannot recover excess economic damages where she has failed to submit any evidence of them.").

Plaintiff fails to identify any evidence creating a genuine dispute as to the Government's argument that she has suffered excess economic damages under MCL § 500.3135(3)(c). Nor does Plaintiff point to any proof that she is entitled to economic damages for a third-party claim pursuant to § 500.3135(3)(c). In fact, the Government's statement of material facts refers to Plaintiff's own deposition, ECF No. 49, PageID.879, where she testified that workers' compensation covered all of her lost wages and that some form of insurance paid all of her medical bills, ECF No. 49-4, PageID.946, a statement which Plaintiff does not dispute. Indeed, Plaintiff testified that she is "not making a claim for lost wages in this case." *Id.*

Additionally, Plaintiff points to no evidence that she suffered any wage loss after January 3, 2026—three years from the date of the accident. In fact, Plaintiff testified that she returned to work in May 2023, ECF No. 49, PageID.879; ECF No. 49-4, PageID.941, a statement which Plaintiff also does not dispute. Thus, the undisputed facts establish that Plaintiff is not entitled to recover for work loss from the United States. *See Harms*, 2017 WL 3642202, at *13 ("Defendant is entitled to summary judgment on [plaintiff's] claim for wage loss damages" because plaintiff had not provided evidence of work loss damages extending beyond the three-year limit).

In any case, during the July 14, 2026 hearing, Plaintiff made it clear that they were only seeking noneconomic damages and were not entitled to economic damages.

Accordingly, the Court **GRANTS** summary judgment to the Government on this point; the Government is entitled to summary judgment as it relates to any purported claim for economic damages. *See Skipper*, 2016 WL 827376, at *7 ("Because plaintiff has not offered any proof that she is entitled to economic damages for a third-party claim pursuant to § 500.3135(3)(c), nor does she appear to be seeking such benefits, defendant is entitled to summary judgment as it relates to any purported claim for economic damages.").

17

### 2. Whether Plaintiff Was More Than 50% at Fault For Her Injuries

Under Michigan's No-Fault Act, noneconomic "[d]amages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault." MCL § 500.3135(2)(b).

The Government argues that the "United States is entitled to summary judgment because Black was more than 50% at fault for her injuries." ECF No. 49, PageID.885. Specifically, the Government points to the undisputed facts that "Black admitted that she did not look behind her before she took her foot off the brake of the forklift to reverse out of the trailer" and that she "admitted that she was not wearing a seat belt while operating the forklift, and that she 'never' did so despite clear safety warnings on the forklift to use the seat belt." ECF No. 49, PageID.886–87; *see* ECF No. 49-4, PageID.959, PageID.961.

In response, Plaintiff argues that "[t]his argument improperly asks the Court to resolve disputed fault allocations that Michigan law reserves for the trier of fact." ECF No. 51, PageID.1067.

The Court agrees with Plaintiff. Typically, under Michigan Law "the question of a plaintiff's comparative negligence is a question for the [factfinder], as is the question of the proximate cause of that negligence." *Bradford v. Wurm*, 610 F. Supp. 2d 835, 846 (E.D. Mich. 2009) (Lawson, J.). Thus,

18

[o]nly under the most extreme circumstances, those, in fact, where reasonable minds could not differ upon the facts, or the inferences to be drawn therefrom, can the case be taken from the [factfinder]. In a case where both parties bear responsibility for some substantial portion of the fault, it is not the kind of exceptional negligence case in which summary judgement is appropriate.

*Johnson v. Serv. Tool Co., LLC*, No. 14-12438, 2015 WL 7760480, at *8 (E.D. Mich. Nov. 30, 2015) (Battani, J.) (cleaned up). In other words, only "when reasonable minds could not differ regarding whether one party was substantially more at fault than the other party summary disposition is appropriate." *Ascencio v. Snider*, No. 316643, 2014 WL 4723830, at *3 (Mich. Ct. App. Sept. 23, 2014) (citation omitted).

Here, reasonable minds could differ whether Plaintiff was substantially more at fault than the other parties.

It is undisputed that a gap of roughly three to four feet opened between the trailer and the dock while Plaintiff was inside the trailer. ECF No. 49, PageID.878; ECF No. 51, PageID.1063; ECF No. 49-4, PageID.961. A reasonable factfinder could conclude that the gap opened because the tractor-trailer moved away from the dock, and that the movement resulted from the negligence of the Postal Service driver.

Specifically, a reasonable factfinder could conclude that the driver's actions, whether from failure to use wheel chocks or to take some other precaution was a but-for cause of the tractor-trailer's movement away

19

from the dock by three to four feet, a gap that ultimately resulted in Plaintiff's fall.

The Government points to the deposition of the Postal Service driver that she "backed the tractor-trailer into the loading dock using the wheel ramps provided and applied the brakes." ECF No. 49, PageID.888; ECF No. 49-6, PageID.995. However, as the Government recognizes, Burse, the driver, also testified that she "did not apply wheel chocks." ECF No. 49, PageID.877; ECF No. 49-6, PageID.995. While Burse explained that "there were not any wheel chocks available at the loading dock for her to use," ECF No. 49, PageID.877; ECF No. 49-6, PageID.995, "American Master Products' operations manager, Gary Simmons, testified that one wheel chock was available at the loading dock on the day of the accident," ECF No. 49, PageID.877; ECF No. 49-5, PageID.978. Thus, there is a dispute of fact as to whether there was a wheel chock available at the loading dock on the day of the accident.

The Government's remaining argument is that, regardless of what caused the gap between the trailer and the dock to open, Plaintiff is more than 50% at fault because her failure to wear a seat belt caused her injuries. ECF No. 49, PageID.887. Specifically, the Government points to the opinion of Dr. Lehto, the Government's expert witness, that Plaintiff would not have fallen from the forklift had she been wearing a seatbelt. *Id.*

20

Of course, Plaintiff's failure to wear a seat belt, and her failure to look behind her before reversing, are relevant to the allocation of fault. However, these failures do not foreclose reasonable minds from differing on the question of whether Plaintiff was substantially more at fault than the other parties. Specifically, a reasonable factfinder could find that the trailer's movement—the event that created the gap and placed Plaintiff in a position to fall—is a substantial share of the fault, such that Plaintiff's failure to wear a seat belt does not necessarily exceed 50%. A factfinder could conclude that if the truck had not moved, an event that Plaintiff did not cause, she would not have fallen—and thus would not have been injured—even without wearing her safety belt.

Accordingly, the Court finds that reasonable minds could differ on the question of whether Plaintiff bears more than half of the fault in her accident. Thus, the Court **DENIES** the Government's motion for summary judgment on this point. *See Redmond v. United States*, 194 F. Supp. 3d 606, 623 (E.D. Mich. 2016) (Lawson, J.) ("The government has not submitted evidence sufficient to show without dispute that the decedent was more than 50 percent at fault for his untimely death, and it certainly has not shown that the record is so one-sided on this point that the Court must render judgment as a matter of law in its favor, barring the plaintiff from recovering any non-economic damages.").

21

3.   **Whether the Government Should Be Permitted to Argue at Trial That Her Employer, American Master Products, Was Also at Fault**

Under Michigan law, "[a] party against whom a claim is asserted may give notice of a claim that a nonparty is wholly or partially at fault." Mich. Ct. R. 2.112 (K)(3)(a). Such a "notice shall designate the nonparty and set forth the nonparty's name and last known address, or the best identification of the nonparty that is possible, together with a brief statement of the basis for believing the nonparty is at fault." Mich. Ct. R. 2.112 (K)(3)(b). Additionally, such notice "must be filed within 91 days after the party files its first responsive pleading," unless, on motion, the court allows for a later filing of the notice on a "showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party." Mich. Ct. R. 2.112 (K)(3)(c). If a party fails to file such a notice, "the trier of fact shall not assess the fault of a nonparty." Mich. Ct. R. 2.112 (K)(2).

The Government filed its first responsive pleading on January 23, 2025. ECF No. 30. Thus, the Government had until April 24, 2025 to file such a notice. However, the Government has not filed such a notice. Nor has the Government moved for a late filing.

Nor did the Government's answer "designate the nonparty and set forth the nonparty's name and last known address, or the best

22

identification of the nonparty that is possible, together with a brief statement of the basis for believing the nonparty is at fault." Mich. Ct. R. 2.112 (K)(3)(b).

Thus, if Mich. Ct. R. 2.112(K)(3) applies to the present circumstances, the fact-finder may not assess the fault of a nonparty.

However, the Government argues that "the United States should be permitted to argue at trial that her employer, American Master Products, was also at fault," because "Michigan Court Rule 2.112(K)(3) conflicts with Rule 12 of the Federal Rules of Civil Procedure." ECF No. 49, PageID.889–91. Specifically, the Government points to the strictures of Federal Rule of Civil Procedure 12(b) requiring that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R. Civ. P. 12(b); *see* ECF No. 49, PageID.891. The Government also points to Federal Rule of Civil Procedure 8(c), which requires that "[i]n responding to a pleading, a party must affirmatively state any … affirmative defense," including the affirmative defense of contributory negligence. Fed. R. Civ. P. 8(c)(1).

"Although substantive state law governs the *merits* of a FTCA claim, the Federal Rules govern *procedural* issues." *Gallivan v. United States*, 943 F.3d 291, 294 (6th Cir. 2019). "[D]etermining whether a state law is substantive requires a court to enter '*Erie*'s murky waters.'" *Berk v. Choy*, 607 U.S. 187, 192 (2026) (citation omitted). "Yet when a Federal Rule of Civil Procedure is on point, a federal court bypasses *Erie*'s inquiry

altogether. … Thus, a valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test." *Id.* "Analyzing whether a Federal Rule displaces state law is straightforward. We first ask whether the Federal Rule answers the question in dispute. … If a Federal Rule answers the disputed question, it governs, unless it exceeds statutory authorization or Congress's rulemaking power." *Id.* (cleaned up).

In this case, the disputed question is whether the United States may be permitted to argue at trial that Plaintiff's employer, American Master Products, was also at fault, even though the United States failed to file a notice of its claim that a nonparty was wholly or partially at fault by designating the nonparty and setting forth the nonparty's name and last known address, or the best identification of the nonparty that is possible, together with a brief statement of the basis for believing the nonparty is at fault.

First, the Court must consider Federal Rule of Civil Procedure 8(c), which governs affirmative defenses. Rule 8(c) "sets the ceiling for what defendants have to say about *affirmative defenses*." *Earehart v. Peerless Chain Co.*, No. 2:25-13340, 2026 WL 1347415, at *2 (E.D. Mich. May 14, 2026) (Murphy, J.) (emphasis added); *cf. Berk*, 607 U.S. at 194 ("Rule 8 sets a ceiling on the information that [litigants] can be required to provide about the merits of their claims."). Specifically, Rule 8(c), "Affirmative Defenses," provides that a party must "affirmatively state" any

24

affirmative defense—and goes on to list alphabetically 18 separate affirmative defenses, from "accord and satisfaction" to "waiver." Nonparty comparative fault is not listed, but contributory negligence is. Fed. R. Civ. P. 8(c).

To determine whether Rule 8's ceiling governs nonparty fault, the Court must first determine whether nonparty fault is an affirmative defense. As the Sixth Circuit has explained, district courts should look to state law to determine what is or what is not "an affirmative defense for the purposes of Rule 8(c)." *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 901 (6th Cir. 2002). As discussed below, Michigan case law is clear: a notice of nonparty fault is not an affirmative defense.[1]

Under the Michigan Rules, whereas the requirements of pleading affirmative defenses are governed by Mich. Ct. R. 2.111(F)(3), the requirements for a notice of nonparty fault are governed by Mich. Ct. R. 2.112(K)(3). Michigan Court Rule 2.111(F)(3), which governs affirmative defenses, like Rule 8(c) of the Federal Rules of Civil Procedure, requires that affirmative defenses must be stated in a responsive pleading. Meanwhile, Michigan Court Rule 2.112(K)(3), a special pleading rule,

---

[1] Some district courts finding a conflict between the federal rules and Mich. Ct. R. 2.112(K)(3) have either assumed—without delving into Michigan case law on the question—that nonparty fault is an affirmative defense, *see Earehart*, 2026 WL 1347415, at *2, or rested on case law that does not clearly so hold, *see Dresser v. Cradle of Hope Adoption Ctr., Inc.*, 421 F. Supp. 2d 1024, 1028 (E.D. Mich. 2006).

25

explicitly allows a party to file a notice of non-party at fault after the responsive pleading is filed. Thus, Michigan courts have explicitly distinguished between these two: "[w]ith an affirmative defense, the defendant does not challenge the plaintiff's prima facie case, but denies that the plaintiff is entitled to the requested relief." *Taylor v. Michigan Petroleum Techs., Inc.*, 307 Mich. App. 189, 202 (2014). On the other hand, "a notice of nonparty at fault notifies the plaintiff that the defendant intends to have the finder of fact consider the fault of a third party and ensures that the plaintiff will have the opportunity to timely assert a claim against that party." *Id.* Thus, "the notice requirements serve distinct purposes and involve different criteria." *Id.*

Because nonparty fault is not an "affirmative defense" of the kind Rule 8(c) governs, Rule 8(c) and Mich. Ct. R. 2.112(K)(3) are not in conflict; they do not answer the same question. Rule 8(c) addresses what a defendant must plead to raise certain affirmative defenses; Mich. Ct. R. 2.112(K)(3) addresses the notice required before a factfinder may allocate fault to a nonparty. Rule 8 therefore does not conflict with, and does not displace, Mich. Ct. R. 2.112(K)(3).

Next, the Government invokes Federal Rule of Civil Procedure 12(2), which provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R. Civ. P. 12(b). By its terms, Rule 12(b) governs defenses raised in a pleading.

However, a notice of nonparty fault is not a pleading and is thus not governed by Federal Rule of Civil Procedure 12. Specifically, Federal Rule of Civil Procedure 7(a), provides an exhaustive list of the documents that qualify as pleadings. However, a notice of nonparty fault appears nowhere on that list. *See* Fed. R. Civ. P. 7(a). Accordingly, one district court has held that notices of nonparty fault do not qualify as pleadings. *Earehart*, 2026 WL 1347415, at *1 ("But motions under Rules 12(b)(6) and 12(f) can only be directed at pleadings. And notices of nonparty fault do not qualify as pleadings under the federal rules.").

Even assuming that Rule 12 governs how a defendant must *plead* nonparty fault, Rule 12 does not govern Mich. Ct. R. 2.112(K)(3)'s requirement that *notice* of such a nonparty fault must be given before the factfinder may "assess the fault of a nonparty." Mich. Ct. R. 2.112(K)(2).

Accordingly, Rule 12 thus does not answer the question presented here—whether the factfinder may allocate fault to a nonparty absent the notice Mich. Ct. R. 2.112(K)(3) requires.

Thus, neither Rule 8 nor Rule 12 conflicts with Mich. Ct. R. 2.112(K)(2). Nor has the Government pointed to another Federal Rule.

Because Mich. Ct. R. 2.112(K)(2) does not conflict with any federal rules, the Court must assess whether the twin aims of *Erie* are implicated, namely "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460,

27

468 (1965); *accord Albright v. Christensen*, 24 F.4th 1039, 1045 (6th Cir. 2022).

As to this question, the Court need not reinvent the wheel. As one court has recently described,

> Courts within this District have held that MCR 2.112(K)'s notice provision is "part and parcel of Michigan's substantive tort law," and not following it "would result in tort litigation differing materially depending on whether a suit was brought in state court or as a diversity action in federal court." Thus, viewing MCR 2.112(K) as a purely procedural matter would "promote the very forum shopping and inequitable administration of the laws Erie sought to avoid."

*Keoleian v. Carter*, No. 25-10090, 2026 WL 395894, at *10 (E.D. Mich. Feb. 12, 2026) (Ludington, J.) (collecting cases) (citations omitted). The Court agrees with the well-reasoned conclusion of these authorities. Accordingly, this Court will, "like other courts within this District, … apply the ninety-one-day procedural bar from MCR 2.112(K)." *Id.*

Because the Government has failed to file a timely and sufficient notice under Mich. Ct. R. 2.112(K), the Court may "not assess the fault of a nonparty" in order to apportion percentages of fault. Mich. Ct. R. 2.112(K)(2). Accordingly, the Government's motion for summary judgment as to this point is **DENIED**.

However, this holding is a narrow one. While the Government may not obtain an allocation of fault to American Master Products as a nonparty under Mich. Ct. R. 2.112(K) or MCL § 600.2957(1), nothing in

this Order precludes the Government from contending, as a matter of proximate causation or as a matter of damages, that American Master Products' conduct caused Plaintiff's injuries. This is because while "MCR 2.112(K) provides plaintiffs a shield from mandated allocation of fault without notice[,] MCR 2.112(K) does not provide plaintiffs a sword to eviscerate a defense on one of the elements comprising plaintiffs' burden of proof." *Veltman v. Detroit Edison Co.*, 261 Mich. App. 685, 695 (2004). Thus, the Government is not prohibited from presenting evidence that American Master Products' conduct was a proximate cause of the plaintiff's injuries.

### IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant West Tech's Motion for Summary Judgment (ECF No. 44), and **GRANTS IN PART AND DENIES IN PART** the Defendant United States's Motion for Summary Judgment (ECF No. 49). Accordingly, Defendant West Tech is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

Dated: July 24, 2026           s/Terrence G. Berg
_____
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

29